**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TERRA GREEN and ROSEMARY MONROE, individually and on behalf of those similarly situated.** | * CIVIL ACTION NO. _____25-cv-365_____ <br> * <br> * SECTION: <br> * |
| *Plaintiffs,* | * <br> * |
| vs. | * <br> * |
| **LOVING HEARTS, LLC;** <br> **LOVING HEARTS RESPITE S.I.L,** <br> **AND PCA SERVICES, INC.; and GIAN** <br> **DURAND.** | * COLLECTIVE ACTION <br> * <br> * <br> * <br> * |
| *Defendant*s | * |
| * * * * * * * * * * * * * * * * * * * | * |

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Terra Green and Rosemary Monroe, persons of full age of majority domiciled in the Eastern District of Louisiana, on their own behalf and on behalf of those similarly situated (at times hereinafter referred to collectively as "Plaintiffs"), hereby allege as follows:

## I.    PARTIES

1.      Plaintiff, Tera Green, is an individual of the full age of majority and a resident of Jefferson Parish, Louisiana, and a former employee of Defendant.

2.      Plaintiff, Rosemary Monroe (hereinafter "Plaintiff Monroe"), is an individual of the full age of majority, a resident of Orleans Parish, Louisiana, and a former employee of Defendants.

3.      Made Defendant herein, Loving Hearts, LLC, (hereafter "Loving Hearts" or "Defendant Loving Hearts") is a Louisiana limited liability company with its domicile address at 101 La Rue France, Ste. 201, Lafayette, LA 70508 with its registered agent and sole

member/manager, Gian Durand, domiciled in St. Tammany Parish in the Eastern District of Louisiana, with a registered agent service address at 10040 I-10 Service Rd., Suite C, New Orleans, LA 70127.

4.     Made Defendant herein, Loving Hearts Respite S.I.L. and PCA Services, Inc., (hereafter "Loving Hearts Respite") is a Louisiana corporation with its principal place of business and Director, Gian Durand, and its registered agent for service, Gail Carter, at 10040 I-10 Service Rd., Suite C, New Orleans, LA 70127.

5.     Made Defendant herein, Gian Durand, (hereafter "Durand" or "Defendant Durand"), resides in St. Tammany Parish in the Eastern District of Louisiana, is a member and a manager of Defendant Loving Hearts, and manages and supervises Loving Hearts and its employees. Durand exercises operational control over Defendant Loving Hearts, including over their pay policies and practices.

6.     Whenever in this petition it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission, and that at the time such act or omission was committed, it was done with the full authorization, ratification, or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

## II.    JURISDICTION AND VENUE

7.     This action alleges the violation of rights under the Fair Labor Standards Act (hereafter "FLSA").  Thus, the predominant action herein gives rise to the jurisdiction in this Court pursuant to 28 U.S.C. §1331. Furthermore, there exist additional state causes of action that arise

out of the same transaction or occurrence as the underlying federal cause of action, and this Court has ancillary jurisdiction over these counts pursuant to 28 U.S.C. §1367.

8.     The Court has personal jurisdiction over Defendants since they regularly conduct business in the Eastern District of Louisiana, and therefore have minimum contacts with the State of Louisiana. Alternatively, the events or omissions giving rise to the instant lawsuit all occurred within Louisiana. Venue lies in this Court over these claims pursuant to 28 U.S.C. § 1391(b)(2).

9.     Defendants are engaged in commerce pursuant to 29 U.S.C. § 203(s).

10.    Defendants' annual gross volume of sales made or business done has exceeded $500,000 for each year during the relevant time period.

11.    Defendants, are joint employers as defined under the FLSA and carry out a common business purpose and exercise unified operation and common control. *See* 29 C.F.R. § 791 *et seq.* Defendants operation is believed to include additional companies and/or corporations that, upon information and belief, were all utilized by Defendants in the employment of Plaintiffs and the Putative class to promote Defendants' joint business interests and operations.

12.    Defendant Durand set company-wide pay practices and policies, including the policies complained of herein, giving rise to Plaintiffs' claims. Defendant Durand was a supervisor, manager, and owner involved in the day-to-day operations and maintained direct responsibility, control, and supervision of Plaintiffs, determined employees' salaries, and was the decision maker not to pay overtime or final wages.

13.    Plaintiffs hereby request a trial by jury.

14.    The amount in controversy satisfies the jurisdictional limits of this Court.

### III.    FACTUAL BACKGROUND

15.    Plaintiff Green accepted employment with Defendants in about March 2023.

16.    Plaintiff Green was hired as a case manager for Defendants in their Mental Health Social Service and Personal Care Assistance organization.

17.    Plaintiff Green's work required her to be on call for 7 days a week at times, with compensation of $100 for that entire week.

18.    Plaintiff Green was compensated at an hourly rate of $27 during her entire employment. This hourly rate was then *reduced* by Defendants to $9 an hour once 39 hours was exceeded in a given work week.

19.    On July 22, 2024, Plaintiff Green was terminated after she was injured at work. She had 59 hours of earned and unpaid overtime.

20.    On October 31, 2024, Plaintiff Green, through counsel, sent a demand letter to Defendants requesting her unpaid and owed overtime.

21.    To date, despite numerous demands, Plaintiff Green has not been compensated for 59 hours of overtime wages owed since her termination by Defendants.

### *Plaintiff Rosemary Monroe*

22.    Plaintiff Monroe accepted employment with Defendants on or about September 20, 2024.

23.    Plaintiff Monroe's work consisted of running errands and managing tasks assigned to her by Defendant, Gian Durand, during her employment for Defendants.

24.    Plaintiff Monroe was compensated at an hourly rate of $27 an hour based on a 5-day work-week at 39 hours a week.

25.    Originally, Plaintiff Monroe was hired to work as an office assistant at Defendants' "Loving Hearts of LA's New Orleans Office" three days a week, and then at Defendant Durand's

4

home two days a week. In reality, from the outset Defendant Durand required Plaintiff Monroe to travel to Slidell and work out of Defendant Durand's home five days a week.

26. At the start of each work day, Defendant Durand sent Plaintiff Monroe a list of tasks to complete. Tasks included cleaning Defendant Durand's home, tending to the garden at Defendant Durand's home, taking Defendant Durand's children to extracurricular activities, taking notes during Defendant Durand's personal meetings, and picking up items Defendant Durand needed from the store.

27. Plaintiff Monroe was required to clock in and out each work day through a timekeeping software system called "Atto:Timesheet." Plaintiff Monroe was compensated based on the hours that were recorded in Atto:Timesheet.

28. For her first week of employment from September 16 to September 22, 2024, Plaintiff Monroe received her pay via direct deposit.

29. However, on October 18, 2024, for the weeks worked from September 23 to October 6, 2024, Plaintiff Monroe received a Venmo payment from Defendant Durand of $1,436.40 with the accompanying note stating "Payroll." Plaintiff Monroe did not get a paystub.

30. The October 18 Venmo payment was considerably lower than the pay Plaintiff Monroe expected having worked 76.30 hours during that two week period. On October 22, 2024, Plaintiff Monroe sent an email to the financial department at Loving Hearts of LA to inquire about missing pay, but she did not receive an email back.

31. As a result of not getting paid her earned wages and being denied payroll information, Plaintiff Monroe was constructively terminated on October 23, 2024. That same day, Plaintiff Monroe sent an email to the financial department, stating:

5

"I emailed yesterday regarding my missing pay from October 18th paycheck and I have not heard back anything on when this will be resolved. Can someone please let me know when it will be corrected and I will receive my missing amount?"

Thereafter, Nicole Toppins, Director of Finance and Operations for Defendants, advised Plaintiff Monroe that she would follow up with Defendant Durand.

32. On October 25, 2024, Ms. Toppins emailed Plaintiff Monroe at 2:31 P.M., stating:

"Hi Rosemary, I compared your check stub to the entries in Atto, our time clock platform, and the hours match what's on your stub. I can email you a copy of your check stub for your review. If you notice any discrepancies, please let me know."

33. At 3:07 p.m., Plaintiff Monroe replied:

"Hi Nicole, I sent the email with all of the screenshots from my Loving Hearts email which is now in active. The pay she venomed me was not even close to what I was supposed to receive as my net pay. Also the hours were not the same. I am again attaching the screenshots of all of those and I will be reaching out to an attorney if I am not going to be paid correctly."

34. At 5:18 P.M., Defendant Durand sent Plaintiff Monroe an additional Venmo payment of $213.04 with the accompanying note stating "Payroll differences."

35. On October 28, 2024, Plaintiff Monroe requested her paycheck stub from October 4, 2024 and any going forward to review her hours and pay.

36. Upon reviewing the October 18, 2024 paycheck stub, Plaintiff Monroe was still missing .97 hours of pay. Plaintiff Monroe worked 39.23 hours in the first week, but her paycheck stub only reflects 38.29 hours. Plaintiff Monroe worked 37.07 hours in the second week, but her paycheck stub only reflects 37.04 hours. Below are screenshots of Plaintiff Monroe's clocked hours, and the hours reflected in her paycheck stub:

6

**Rosemary**

| 23 - 29 Sep ▾ | | ‹ › |

Total Paid Hours ↓ +

**39.23h**

**Rosemary**

| 30 Sep - 6 Oct ▾ | | ‹ › |

Total Paid Hours ↓ +

**37.07h**

---

**Employee Pay Stub**                 Check number:                         Pay Period: 09/23/2024 - 10/06/2024

**Employee**                                                                 **SSN**

Rosemary Monroe, 2525 Verbana St, New Orleans, LA 70122                      ***-**-3860

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| 1 - Office Assistant | 38.29 | 27.00 | 1,033.83 | 1,033.83 |
| 2 - Office Assistant | 37.04 | 27.00 | 1,000.08 | 1,203.93 |
|  | 75.33 |  | 2,033.91 | 2,237.76 |

| Taxes | | | Current | YTD Amount |
|---|---|---|---|---|
| Medicare Employee Addl Tax | | | 0.00 | 0.00 |
| Federal Withholding | | | -168.00 | -168.00 |
| Social Security Employee | | | -126.10 | -138.74 |
| Medicare Employee | | | -29.49 | -32.45 |
| LA - Withholding | | | -60.88 | -61.45 |
| | | | -384.47 | -400.64 |

| **Net Pay** | | | **1,649.44** | **1,837.12** |

37.    On October 28, 2024, Plaintiff Monroe emailed Ms. Toppins about the remaining discrepancy of .97 hours on her October 18, 2024 paycheck stub.

38.    On November 1, 2024, Plaintiff Monroe was instructed to go to the Loving Hearts of LA New Orleans office to pick up a paper check for hours she worked from October 7, 2024 through October 20, 2024.

39.    Although Plaintiff Monroe worked 34.82 hours in the first week and 36.52 hours in the second week, her paycheck stub reflects she worked 35 hours in the first week and only 21 hours in the second week. Plaintiff Monroe's November 1, 2024 paycheck is missing payment for a total of 15.34 hours. Below are screenshots of Plaintiff Monroe's clocked hours, and the hours reflected in her paycheck stub:

7



40.    On November 4, 2024, Plaintiff Monroe sent the following email to both Ms. Toppins and Defendant Durand where she reattached her recorded hours on Atto:Timesheet, stating:

> "My last paycheck stub from Nov. 1st and pay were not correct. The stub listed my hours as 35 and 21, however I have attached the Atto weekly summaries which show them as 36.52 and 34.82 so I was shorted 15.34 hours.
> Also, again repeating the last email, the missing hours from October 18th's payday were still not paid: My actual hours in Atto were 39.23 and 37.07, however on my paystub they were input as 38.29 and 75.33. This shorted me by .97
> This is now a total of 16.31 hours that I am still owed and need ASAP. Please advise on when I will receive this."



41.    On November 11, 2024, with no response from Defendants, Brandon Brown, an attorney assisting Plaintiff Monroe, sent an additional email to Defendants demanding they pay

Plaintiff Monroe for the 16.31 hours of work she had not been compensated for by a deadline of November 15, 2024. Defendants did not respond.

42.     On November 15, 2024, Plaintiff Monroe did not receive a direct deposit, Venmo, or paper paycheck for the remaining 16.08 hours she worked just prior to her termination. That same day, Plaintiff Monroe sent the following email to Ms. Toppins and Defendant Durand, stating:

> "I have not received a direct deposit today for the remaining 16.08 hours worked in October the week of the 21st. I also have not heard back on the 16.31 hours I was previously shorted from my last two paychecks which were sent in my previous email with attachments. Please advise when I will receive the remaining 32.39 hours I am now owed."

43.     To date, despite numerous demands, Plaintiff Monroe has not been compensated for 32.39 hours of work she performed for Defendants.

## COLLECTIVE ACTION ALLEGATIONS AND DEFINED CLASS
## 29 U.S.C. § 216(b)

44.     Plaintiffs hereby re-allege and reincorporate all paragraphs set forth above.

45.     Plaintiffs bring this complaint as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all other current and former similarly situated employees who performed any work for either Defendant Gian Durand, or Defendant Loving Hearts within three years prior to the date of filing this lawsuit, and who were not paid overtime wages for hours worked over forty in a workweek.

46.     Defendants operate with a purposeful common practice, policy, or plan to deny their employees their lawfully earned wages.

47.     Plaintiffs are similarly situated to the remaining members of the Putative Class.

48.     Plaintiffs request that, at the soonest practicable time, the Court order that notice be given to the remaining members of the collective so that they may exercise their right to opt in to this action.

### FAILURE TO PAY OVERTIME WAGES (29 U.S.C. § 207)

49.     Plaintiffs hereby re-allege and reincorporate all paragraphs set forth above.

50.     The FLSA requires that employers pay employees at a rate not less than one and one-half time the regular rate at which she is employed for all hours worked beyond forty hours in a workweek. 29 U.S.C. § 207.

51.     Plaintiffs and all Putative Class members were non-exempt employees of Defendants and were owed one and one-half times the regular rate for all hours worked over forty in a workweek while employed.

52.     Defendants operate with a purposeful and intentional practice of refusing to pay overtime wages to employees as a policy and/or practice.

53.     Defendants' nonpayment of overtime to its employees was and is knowing, willful, reckless, and not based in a good faith belief that their conduct was in accordance with the law.

### SECOND CAUSE OF ACTION
### LOUISIANA WAGE PAYMENT ACT (La. Rev. Stat. §§ 23:631-632)

54.     Plaintiffs hereby re-allege and reincorporate all paragraphs set forth above.

55.     Defendants failed to pay Plaintiff Monroe and Plaintiff Green sums earned and owed during employment on or before the next regular payday, or no later than fifteen days, following the date of discharge.

56.     Plaintiff Monroe and Plaintiff Green have made amicable demands of payment of the wages they earned while employed, but were never paid their owed wages.

57. Plaintiff Green demanded her earned and unpaid wages reflected above on October 31, 2024 from Defendants, but has still not received the money owed to her.

58. Plaintiff Monroe demanded her earned and unpaid wages reflected above on November 4 of 2024 from Defendants, but has still not received all wages owed to her.

59. Defendants, upon learning that Plaintiffs were going to take legal action to pursue owed wages, mailed a check to Ms. Monroe on February 10, 2025 for $394.16, compensating for not even half of the wages Ms. Monroe is owed.



Further, this check was backdated to November 29, 2024. Below are photos of the stamped date on the envelope and the backdated check enclosed:



This further evidences Defendants' violation of the Louisiana Wage Payment and their lack of a good faith basis for unduly delaying the timely payment of their employee's wages more than 90 days after amicable demand.

60.     Defendants' refusals to pay earned and owed wages to Plaintiffs after discharge, especially after amicable demand, is a separate and distinct violation of the Louisiana Wage Payment Act.

61.     Defendants' actions violate the Louisiana Wage Payment Act. Plaintiffs are entitled to full payment of unearned wages, plus penalty wages according to statute, and recovery of reasonable attorneys' fees and costs.

**Plaintiffs respectfully request a trial by jury.**

**WHEREFORE**, Plaintiffs respectfully pray for judgment as follows:

   a.  That this case be allowed to proceed as a collective action;

   b.  That this Court authorize notice to be sent to all Putative Class Members as defined;

   c.  For an award of all unpaid wages and overtime;

   d.  For an award of liquidated damages pursuant to 29 U.S.C. § 216(b);

   e.  For an award of reasonable attorney's fees and costs of suit;

   f.  For damages and penalties under the Louisiana Wage Payment Act;

   g.  All compensatory and punitive damages as called for in the FLSA;

   h.  For injunctive or equitable relief as provided by law;

   i.  For pre and post-judgment interest to the extent provided by law; and

   j.  For such other and further relief as may be just and proper.

Respectfully Submitted:

Kenneth C. Bordes (Bar #35668)
Amneh Attallah (Bar #41146)
Abigail Floresca (Bar #41248)
 KENNETH C. BORDES,
ATTORNEY AT LAW, LLC
4224 CANAL ST.
NEW ORLEANS, LA 70119
P: 504-588-2700
F: 504-708-1717
E: KCB@KENNETHBORDES.COM